IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:06-CV-187-FL(3)

| | |
|---|---|
| JESSIE ANDERSON,<br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)<br>)  **MEMORANDUM &**<br>)  **RECOMMENDATION**<br>)<br>)<br>)<br>) |

This matter is before the Court upon the parties' cross-motions for Judgment on the Pleadings **[DE's 16-17 & 23-24]**. The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). For the following reasons, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-16]** be GRANTED, and that Defendant's Motion for Judgment on the Pleadings **[DE-23]** be DENIED. Specifically, it is RECOMMENDED that the matter be remanded to permit the ALJ to specifically describe and explain his findings with regard to Plaintiff's obesity.

1

## Statement of the Case

Plaintiff applied for DIB on August 16, 2004 alleging that he became disabled on August 6, 2004 (Tr. 17). After his claims were denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 17. Following a hearing, the ALJ issued an unfavorable decision on January 18, 2006, in which he determined that Plaintiff was not disabled during the relevant time frame. *Id.* at 17-24. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, making the January 18, 2006 determination Defendant's final decision. *Id.* at 9-11. The instant action was filed by Plaintiff on August 30, 2006 **[DE-1]**.

## Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more

2

than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## **Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 18). At step two,

3

the ALJ found that Plaintiff suffered from the following severe impairments: 1) cardiomyopathy; 2) atrial fibrillation; 3) hypertension; 4) diabetes mellitus; and 5) asthma. *Id.* at 18. The ALJ did not address whether Plaintiff's gout and morbid obesity were or were not severe impairments. In completing step three, however, the ALJ determined that these impairments, either singly or in combination, were not severe enough to meet or medically equal any listed impairment. *Id.*

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work. *Id.* at 21. Based on this finding, the ALJ found that Plaintiff could not perform any of his past relevant work. *Id.* at 22. Finally, at step five the ALJ concluded that the Medical-Vocational Guidelines ("Grids") Rule 201.27 directed a finding that Plaintiff was not disabled at any time through the date of his decision *Id.* at 22-23. A summary of the record relied upon by the ALJ now follows.

An Adult Function Report was completed by Plaintiff on August 30, 2004. *Id.* at 62-70. He indicated that he is no longer able to exercise. *Id.* at 66. Plaintiff stated that his impairments affect his ability to lift, squat, walk and climb stairs. *Id.* at 67. Specifically, he contended that he was able to walk about 20 feet before needing to stop and rest for about five minutes before he resumed walking. *Id.*

On August 6, 2004, Plaintiff was treated by Dr. Sanjay Patel for complaints of shortness of breath. *Id.* at 186. Upon examination Plaintiff was found to have an irregular rate and rhythm, as well as significant pitting edema bilaterally. *Id.* at 187. An

4

echocardiogram ("ECG") revealed atrial fibrillation with rapid ventricular response and a rate of 120 beats per minute. *Id.* Dr. Patel diagnosed Plaintiff with cardiomyopathy and atrial fibrillation. *Id.* Hospitalization was recommended, but due to insurance and self-pay issues Plaintiff was adamant about being treated as an outpatient. *Id.*

Plaintiff continued to be treated by Dr. Patel during the relevant time period. *Id.* at 122-191, 205-231. Throughout this period of treatment, Dr. Patel and other medical care providers repeatedly diagnosed Plaintiff with obesity. *Id.* at 124, 164, 177, 186, 192 & 194 Plaintiff, who is 6' 1", weighed over 280 pounds throughout the relevant time period. *Id.* at 122-191, 205-231. At one point he weighed 351 pounds. *Id.* at 140.

State agency medical consultant Monica Thompson completed a Physical Residual Functional Capacity Assessment on January 3, 2005. *Id.* at 114-121. She determined that Plaintiff could: 1) occasionally lift and/or carry 20 pounds; 2) frequently lift and/or carry 10 pounds; 3) stand and/or walk about 6 hours in an 8 hour workday; 4) sit (with normal breaks) about 6 hours in an 8 hour workday; and 5) push and/or pull with no limitations other than as noted for lifting and carrying. *Id.* at 115. No postural, manipulative, visual, or communicative limitations were noted. *Id.* at 116-118. However it was reported that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, and hazards such as machinery and heights. *Id.* at 118. Ultimately, the ALJ made the following finding with regard to the opinions of the non-examining State agency medical consultants of record:

> The State agency consultants found that the [Plaintiff] could perform light exertional activities. The [ALJ] finds that these consultants did not give sufficient consideration to the [Plaintiff's] symptoms and gives little weight to

5

these opinions.
*Id.* at 21.

On August 22, 2005, Dr. Patel completed a medical source statement in which he indicated that Plaintiff's heart condition is rated as cardiac class II-III. *Id.* at 218. Patients with cardiac disease in these classes have slight to marked limitations in their physical activity. *Id.* Dr. Patel also provided a medical source statement dated January 31, 2005 indicating that–despite the fact that Plaintiff was doing reasonably well on medications– Plaintiff should be granted disability. *Id.* at 122, 195. With regard to these statements, the ALJ noted the following:

> treatment records reveal that the [Plaintiff's] cardiomyopathy and atrial fibrillation have been well-controlled with his treatment regimen. Dr. Patel's treatment records have repeatedly stated that the [Plaintiff] was "doing well". He denied shortness of breath at rest or on exertion. He also denied having any chest pain, palpitations, or syncope . . . .Dr. Patel's classification of the [Plaintiff's] heart condition is contradicted by his own treatment records which indicate that the [Plaintiff] is active without significant symptoms. Further, his statement that the [Plaintiff] should be granted disability relates to an issue that is reserved to the Commissioner. The physician has not described [Plaintiff's] abilities and limitations for specific work-related activities. Therefore, the [ALJ] gives little weight to these opinions.
> *Id.* at 19, 21, 122-191, 205-231.

Furthermore, with regard to Plaintiff's hypertension, the ALJ found that:

> [Plaintiff] has been prescribed an anti-hypertensive treatment regimen and his blood pressures have generally been within normal limits. The [Plaintiff] has not developed any symptoms or signs of hypertensive retinopathy, nephropathy, or cerebral ischemia. He has cardiomyopathy . . . but this condition has been controlled with medication with no signs of overt congestive heart failure.
> *Id.* at 19, 122-191-205-231.

6

With regard to Plaintiff's diabetes mellitus, the ALJ made the following findings:

> [Plaintiff] has been followed for this condition by Richard Shultzaberger, M.D. The [Plaintiff] is prescribed treatment with glipizide. The [Plaintiff's] diabetes has not always been well-controlled as evidenced by serum glucose levels as highs as 346 and HgbA1c levels as highs as 10.7. The [Plaintiff] does not have any symptoms or signs of diabetic retinopathy, neuropathy, or peripheral arterial disease. He does have proteinuria which was attributed to his diabetes. He has been treated for this by Jeffery Hoggard, M.D. The [Plaintiff's] serum creatinine has ranged from 1.1 to 1.3. However, since he has been under treatment, the serum creatinine has declined to 0.9.
> *Id.* at 19-20, 123-191, 197-217, 219-231.

Finally, with regard to Plaintiff's history of asthma the ALJ stated:

> treatment records reveal that he has not had any acute attacks of asthma that required emergency medical management since his alleged onset date. Further, physical examinations by his attending physicians have revealed that the [Plaintiff] does not have any clinical signs of respiratory insufficiency such as cyanosis, clubbing, or use of the accessory muscles of respiration.
> *Id.* at 20, 122-191, 205-231.

The ALJ did not include any specific analysis of Plaintiff's obesity or gout in his decision.

Plaintiff also testified at the hearing in this matter. *Id.* at 236-263. He stated that in August, 2004 he suffered from shortness of breath and swelling in his legs. *Id.* at 244. Eventually doctors diagnosed him with congestive heart failure. *Id.* According to Plaintiff, the symptoms of his congestive heart failure are adequately controlled by medication, although Plaintiff did later assert that he still experiences shortness of breath and tightness in his chest. *Id.* at 245, 248-249. Likewise, Plaintiff testified that the symptoms of his diabetes were also controlled with medication. *Id.* Plaintiff did note that his diabetic medication caused him to get the gout. *Id.* at 246. In addition, Plaintiff occasionally

7

experiences numbness in his ankles, feet and toes as a result of his diabetes. *Id.* Plaintiff also discussed his hypertension, stating again that medications adequately controlled his symptoms. *Id.* at 246-247. However, Plaintiff later asserted that he could not walk more then 50 feet without difficulty. *Id.* at 250-251. He also noted that he has to elevate his legs 1-2 times per month. *Id.* at 261. Finally, Plaintiff testified that he occasionally has difficulty taking a shower and has difficulty playing with his four year old. *Id.* at 256-258.

The ALJ made the following observations with regard to the credibility of Plaintiff's testimony:

> [Plaintiff's] allegations of functional limitations are not supported by the longitudinal record. The [Plaintiff's] cardiomyopathy and atrial fibrillation have been controlled with medication. The treatment records repeatedly state that he has no significant symptoms from this condition and that he has remained active. The [Plaintiff] has not developed any other complications from his hypertension. He has developed proteinuria due his diabetes, but his serum creatinine has remained within normal limits. He has not developed any other complications from diabetes. The [Plaintiff] has not had any acute asthmatic attacks and he does not have any clinical signs of respiratory insufficiency. The [Plaintiff's] own descriptions of his activities of daily living indicate that he is capable of performing tasks at least at the sedentary level of exertion. In addition, the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the [Plaintiff's] allegations of functional restrictions are not fully credible.
> *Id.* at 21.

Based on this record, the ALJ concluded that Plaintiff retained the RFC to perform a the full range of sedentary work. *Id.* Specifically, the ALJ found:

> [Plaintiff] has the [RFC] to sit for up to 6 hours in an 8-hour day, to stand and

8

> walk for up to 1 hour each in an 8-hour day, to lift a maximum of 10 pounds, and to frequently lift and carry articles like docket files, ledgers, and small tools.
> *Id.*

Moreover, the ALJ concluded that the Grids directed a finding that Plaintiff was not disabled at any time through the date of his decision  *Id.* at 22.

In his assignments of error, Plaintiff first alleges that the ALJ failed to make a determination as to whether Plaintiff's gout and morbid obesity are severe impairments. At step two of the five-step sequential analysis, the ALJ must consider the severity of an impairment both individually and in combination with other impairments. Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir. 1986). An impairment is "severe" unless it "has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984)(internal quotations omitted). Thus, the severity standard is a slight one. Stemple v. Astrue, 475 F. Supp. 2d 527, 536 (D. Md. 2007).

Here, the ALJ failed to specifically mention either gout or obesity when discussing Plaintiff's impairments and resulting RFC. Notably, Plaintiff did not allege obesity or gout as an impairment when he filed his applications for benefits (Tr. 45-47, 54-61). For this reason, the undersigned finds Plaintiff's argument meritless with regard to Plaintiff's gout. This is because the references to that medical impairment in the record are relatively infrequent. Furthermore, the references which do exist demonstrate that Plaintiff's gout was well controlled (Tr. 125). However, Plaintiff is consistently assessed with obesity by his

9

treating physicians throughout the record. Accordingly, the undersigned will further analyze the ALJ's failure to specifically mention this impairment. See Stemple, 475 F. Supp. 2d at 539-540 (references to weight in record sufficient to alert ALJ despite fact that claimant did not specifically claim obesity as an impairment).

First, the court notes that Social Security Ruling ("SSR") 02-1p specifies that the ALJ must explain how conclusions regarding a claimant's obesity were reached. SSR 02-1p, 2000 WL 628049 at *6-7 (S.S.A.). The ruling further states that the existence of obesity is established by:

> generally rely[ing] on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. Thus, in the absence of evidence to the contrary in that case record, we will accept a diagnosis of obesity given by a treating source or consultative examiner.
> Id. at *3.

As already mentioned, several diagnoses of obesity are contained in the record, and the undersigned finds that this standard has been met.

Descriptive terms for levels of obesity (e.g., "severe", "extreme," or "morbid") do not establish whether obesity is a severe impairment for disability purposes. Id. at*2. An individualized assessment should be done of the impact of obesity on an individual's functions when deciding whether the impairment is severe. Id. "Given the general 'duty of explanation' . . . an ALJ must . . . explain his conclusions regarding obesity at step two." Stemple, 475 F. Supp. 2d at 539, fn 31. This was not done by the ALJ in this case, as Plaintiff's obesity was not even mentioned by the ALJ during step two.

10

Obesity, even if not severe, can also be relevant at steps three and four of the sequential analysis. See 20 C.F.R. Pt. 404, Supt. P. App. 1, Section 1.00Q (2007)("when determining whether an individual with obesity has a listing-level impairment or combination of impairments . . .adjudicators must consider any additional and cumulative effects of obesity"). While there is no listing for obesity, obesity can increase the severity of coexisting or related impairments to the extent that the combination of impairments meets a listing. SSR 02-1p, 2000 WL 628049 at *5. See also Boston v. Barnhart, 332 F.Supp. 2d 879, 886 (D. Md. 2004). This is especially true of respiratory and cardiovascular impairments. *Id.* Again, Plaintiff's obesity was not analyzed by the ALJ during his step three and four analyses.

Accordingly, the undersigned finds that this assignment of error has merit and that this matter should be remanded to allow more specific findings with regard to Plaintiff's obesity. In light of this finding, it is unnecessary to address Plaintiff's other assignments of error.

## **Conclusion**

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-16]** be GRANTED, and that Defendant's Motion for Judgment on the Pleadings **[DE-23]** be DENIED. Specifically, it is RECOMMENDED that the matter be remanded to permit the ALJ to reevaluate the severity of Plaintiff's impairments, including obesity, at step two of the sequential analysis. Should the ALJ again find Plaintiff's impairments severe, either individually or in combination, Plaintiff's obesity

11

should also be taken into account at steps three, four and five. The ALJ should explain how all of his conclusions, particularly those regarding obesity, are reached.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 13th day of July, 2007.

_____
William A. Webb
U.S. Magistrate Judge